UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN BANK as Special Administrator for the Estate of JESUS MONTERO, LUZ MONTERO, JUAN ALCANTAR, EPIFANIO CONTRERAS, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN DUPAGE LANDSCAPING, INC. an Illinois corporation, GENERAL MOTORS CORPORATION, a Delaware corporation and BRISKIN MANUFACTURING, INC., an Illinois corporation,<br><br>Defendants. | (Consolidated)<br>No. 00 C 4026<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

In this Illinois wrongful death action, defendant General Motors Corporation ("GM") moves for partial summary judgment on all claims for that portion of damages attributable to the future earnings of decedents Luz Montero, Jesus Montero, Juan Alcantar, and Epifanio Contreras on the ground that, as undocumented aliens, their future earning would have been illegally earned and paid contrary to public policy. In addition, GM moves for summary judgment on the wrongful death claims asserted on behalf of Epifanio Contreras.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). For the reasons stated below, GM's motion for partial summary judgment is granted in part and denied in part.

---

[1] GM had also sought summary judgment on the wrongful death claim asserted on behalf of Juan Alcantar but voluntarily withdrew that portion of its motion for partial summary judgment. *See* General Motors Corporation's Motion Seeking Permission from the Court to Voluntarily Withdraw a Portion of its Motion for Partial Summary Judgment [#305].

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

**I.    Background**

This action arises out of a collision between two commercial trucks on July 6, 1998. One truck, a 1978 C-65 Chevrolet medium duty truck, carried a driver, Luz Montero, and three passengers, Jesus Montero, Epifanio Contreras, and Juan Alcantar, who were on their way to a job site for Western DuPage Landscaping Company, the owner of the C-65 truck. The other truck was

2

a Mack heavy duty dump truck. Following the collision, a fire ensued, which caused severe burns to the men, resulting in their deaths. Thereafter, plaintiff First American Bank, the administrator of the decedents' estates, filed the present wrongful death/ product liability action.

## II. Decedents' Immigration Status

It is undisputed that Jesus Montero, Luz Montero, Juan Alcantar, and Epifanio Contreras were citizens of Mexico on July 6, 1998 and that they were not aliens admitted to the United States for permanent residence status. (Def. L.R. 56.1 at ¶¶ 1-4). It is also undisputed that the agency formerly known as United States Department of Justice, Immigration, and Naturalization Service has no records that would support a claim that any of the decedents was a United States citizen or an alien admitted to the United States with permanent residence status. (Def. L.R. 56.1 at ¶ 111).

Plaintiff also does not refute the testimony of Epifanio Contreras' ("Contreras") mother that she was aware that Contreras was violating U.S. immigration laws. (Def. L.R. 56.1 at ¶ 26). Nor does plaintiff refute the testimony of Contreras' father that he informed his son, "[Y]ou don't have any documents," but his son came to the United States anyway. (Def. L.R. 56.1 at ¶ 41). Plaintiff also does not refute the substance of the testimony of Sergio Alcantar, Juan Alcantar's brother, that Juan Alcantar did not have proper documents to enter or live in the United States. (Def. L.R. 56.1 Additional Statement of Undisputed Facts at ¶ 163).[2] In addition, Plaintiff does not dispute that Luz

---

[2] It is unclear why GM failed to submit the evidence and material facts stated in its Additional Statement of Undisputed Facts in its original Local Rule 56.1 Statement of Undisputed Facts. Discovery was closed at the time GM submitted its motion for summary judgment and its accompanying materials, which means that GM was aware of the evidence and material facts submitted in its Additional Statement of Undisputed Facts at the time it filed its Local Rule 56.1 Statement of Undisputed Facts. Nevertheless, because "[t]here is no rule preventing a party moving for summary judgment . . . from providing additional foundational materials with the reply," *Fenje v. Feld*, 301 F. Supp. 2d 781 at 811 (N.D. Ill. 2003), and because plaintiff raised no objection to the Additional Statement of Undisputed Facts in its Supplemental Response to GM's Motion for Partial Summary Judgment, the court will consider GM's additional undisputed facts to the extent that they are supported by the record. *See also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309 at 319 (7th Cir. 2003) ("These is no blanket prohibition from filing additional affidavits when a movant for summary judgment files a reply brief following a non-movant's

Montero did not have proper documents to enter or live in the United States (*Id.* at ¶ 165) or that Jesus Montero was not a legal resident of the United States (*Id.* at ¶ 166).

### III. Epifanio Contreras' Familial Relationships

At the time of his death, Contreras was unmarried and had no children. (Def. L.R. 56.1 at ¶¶ 16, 17, 42). He was survived by his parents, Maria Barron and Sebastian Zapata, as well as twelve siblings. (Def. L.R. 56.1 at ¶¶ 8, 31).

Ms. Barron and Mr. Zapata reside on their family farm with seven of their children. (Def. L.R. 56.1 at ¶ 27). Mr. Zapata owns 40 hectares of land, while Ms. Barron owns 14 hectares of land. (Def. L.R. 56.1 at ¶ 51). Contreras' family grows field crops and raises pigs and cows. (Def. L.R. 56.1 at ¶ 32). The family has about 25 to 30 pigs and approximately 80 cows. *Id.* The farm has an irrigation pump and a Massey Ferguson tractor. (Def. L.R. 56.1 at ¶¶ 30, 33). Mr. Zapata sells cattle in order to purchase animal feed. (Def. L.R. 56.1 at ¶¶ 63, 64). None of Ms. Barron's or Mr. Zapata's twelve children provide their parents with financial support; however, Contreras' brothers provide their physical labor to support the family farm. (Def. L.R. 56.1 at ¶¶ 8, 10).

Although Contreras had a very close relationship with his mother and grew up in a close family, (Pl. L.R. 56.1 Add'l Facts at ¶¶ 132, 135), he only spoke with his mother by telephone on three occasions following his move to the U.S. in 1995. (Def. L.R. 56.1 at ¶ 11). Contreras' parents did not have a telephone on their farm but received the telephone calls from Contreras at a public telephone inside a store in their rural community. (Pl. L.R. 56.1 Add'l Facts at ¶ 136). Contreras also wrote letters to his mother about once a month. (Def. L.R. 56.1 at ¶ 12). In addition, Contreras occasionally sent his parents gifts while he lived in the U.S. These gifts included clothes, shoes,

---

response.).

work tools, a meat processor, a set of plates, and a dress pattern, (Def. L.R. 56.1 at ¶¶ 14, 19, 39).

Contreras also sent gifts of money to his mother. (Def. L.R. 56.1 at ¶ 15). Contreras sent his mother approximately $400 per month in the last two years before his death. (Def. L.R. 56.1 at ¶ 23; Pl. L.R. 56.1 Add'l Facts at ¶ 140). Contreras did not send his mother money when he was visiting his family in Mexico from December 1997 until after his return to the United States in April 1998. (Pl. L.R. 56.1 Add'l Facts at ¶ 143). Contreras also did not send money to his family in December of 1996, although he sent money to his parents in January of 1997. (Def. L.R. 56.1 at ¶ 25). Neither Ms. Barron nor Mr. Zapata visited Contreras while he was living in the United States (Def. L.R. 56.1 at ¶¶ 13, 36).

## ANALYSIS

### I.   Illegality Defense

Before reaching the substantive issue of whether undocumented aliens may recover damages for lost future wages, the court must address the procedural argument raised by plaintiff that GM's failure to plead "illegality" in its answer or other pleadings resulted in a waiver of that defense. Illinois law, which governs this diversity action, "does not recognize waivers of illegality defenses or permit a party to be estopped from asserting such a defense." *Nathan v. Tenna Corp.*, 560 F.2d 761 at 763 (7th Cir. 1977), citing *Hall v. Woods*, 325 Ill. 114, 135, 156 N.E. 258 (1927); *Lyons v. Schanbacher*, 316 Ill. 569, 574-75, 147 N.E.2d 440 (1925). In *Nathan*, the Seventh Circuit rejected the substantive argument that the defendant waived its right to assert the illegality defense by not effectively terminating a contract when it learned of illegal conduct. *Id.*

The present issue, however, relates to the procedural pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, which governs matters of pleading in diversity cases regardless

of state pleading rules. *See Jessen v. Aetna Life Ins. Co.*, 209 F.2d 453 at 458 (7th Cir. 1954) ("Illinois rules as to procedure are not applicable, for, under the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, the District Court was bound to only apply the substantive laws of the State and the obligation to follow the federal procedural rules.). *See also Dawn Equip. Co. v. Micro-Tank Sys.*, 186 F.3d 981 at 986 (7th Cir. 1999) ("In a diversity case, [the court] appl[ies] federal procedural law and state substantive law."). Under Rule 8(c), a party must set forth in a responsive pleading all enumerated defenses, including illegality, and "any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). The purpose of requiring affirmative defenses to be pleaded is to give the opposing party notice and the opportunity to respond. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971). Federal Rule of Civil Procedure 7 "clarifies that the use of the word 'pleading' in Rule 8 includes the answer, but not other motions." *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000). GM has cited no authority from the Seventh Circuit that would foreclose waiver of the defense of illegality in contrast to waiver of any other defense. *See Rodriguez v. The Texan, Inc.*, No. 01 C 1478, 2002 U.S. Dist. LEXIS 17379, *6-7 (N.D. Ill. Sep. 16, 2002) (In an FLSA action, district court precluded potential arguments stemming from plaintiffs' status as illegal aliens where defendant failed to plead illegality as an affirmative defense in its answer or raise the issue in the final pretrial order.). *Cf., Heller Financial Leasing, Inc. v. Gordon*, No. 03 C 6326, 2004 WL 2806458, *6 (N.D. Ill. Dec. 3, 2004) (District court rejected argument that contractual waiver of defense should not be applied to defendants' counterclaims asserting tortious conduct because such a ruling would run contrary to public policy.).

As a general matter, the failure to raise affirmative defenses in a responsive pleading may

result in a waiver of such defenses. *See Castro v. Chi. Hous. Auth.*, 360 F.3d 721 at 735 (7th Cir. 2004) ("Federal Rule of Civil Procedure 8(c) requires that defendants raise all affirmative defenses that will defeat the allegations in the complaint in a responsive pleading. We have stated numerous times that if a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived."). Although the court has the discretion to permit an answer to be amended to assert an affirmative defense not raised at the outset, *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997); Fed. R. Civ. P. 15(a), the circumstances should demonstrate a good reason why untimeliness should be excused. For example, as the Seventh Circuit has explained, "The pertinence of a particular defense may only become apparent after discovery, . . . in which case it would be reasonable for the court to permit the belated assertion of that defense." *Id.* The Seventh Circuit cautioned, however, that "the defendant remains obligated to act in a timely fashion. *Id.*, citing *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987); *Home Depot, Inc. v. Guste*, 773 F.2d 616, 621 n.4 (5th Cir. 1985). Thus, "[o]nce the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense." *Id.*

In this instance, plaintiff actually pled the undocumented status of decedents in the complaint in order to establish diversity jurisdiction. Thus the issue was apparent from the outset. Further, the record demonstrates that in August 2000, plaintiff obtained information from the Immigration and Naturalization Service that decedents were undocumented. GM makes no argument it did not receive such materials in a timely fashion during discovery. Thus, GM could certainly have made a good faith pleading of the defense at the time it received such information. In fact, GM has yet to seek leave to amend its pleading but rather raises the issue for the first time by way of its motion of summary judgment. GM's second excuse, that it first learned of plaintiff's claim for future lost

earnings on August 31, 2004, when plaintiff served discovery concerning lost future lost wage claims, is unpersuasive. Future lost earnings are part of the standard formula for damages for wrongful death. *See* Illinois Pattern Jury Instructions 31.04 and 31.06.³ The court, having weighed the arguments in light of the record before it, concludes that GM had ample opportunity to timely assert a defense of illegality but failed to do so. The court is ready to try this case and the pretrial conference is imminent. It is too late to revisit the pleadings. Thus, the court deems the defense of illegality waived.

## II.     The Wrongful Death Claims of Epifanio Contreras' Family

Under the Illinois Wrongful Death Act, a jury "may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from [a wrongful death] to the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2 (2004). The Illinois Supreme Court has expanded the scope of pecuniary injury to include nonmonetary losses. *Cooper* v. *Chi. Transit Auth.*, 505 N.E.2d 1239, 1243, 153 Ill. App. 3d 511 (1ˢᵗ Dist. 1987), citing *Bullard* v. *Barnes*, 468 N.E.2d 1228, 102 Ill. 2d 505 (Ill. 1984). Such nonmonetary losses include the loss of society and companionship suffered by parents after the loss of their adult child. *Id.* at 1243, citing *Ballweg* v. *City of Springfield*, 499 N.E.2d 1373, 114 Ill. 2d 107 (Ill. 1986). Pecuniary injuries also include "deprivation of support, as well as deprivation of the companionship, guidance, advice, love and affection of the deceased." *Bullard*, 468 N.E.2d at 1232, citing *Hall* v. *Gillins*, 147 N.E.2d 352, 13 Ill.2d 26 (Ill. 1958).

---

³When determining pecuniary loss in a wrongful death action, Illinois Pattern Jury Instructions 31.04 and 31.06 allow the jury to consider, *inter alia*, the money, benefits, goods, and services "the decedent was likely to have contributed *in the future*." IPI 31.04, 31.06 (emphasis added). *See also Hudnut* v. *Schmidt*, 58 N.E.2d 929, 324 Ill. App. 548 (3d Dist. 1944) ("[Pecuniary loss] can easily be determined by proof of the personal characteristics of the deceased, his mental and physical capacity, his habits and industry and sobriety, his age, the amount of his usual earnings by proof of what he might in all probability *earn in the future*. . . .") (emphasis added).

8

Parents are entitled to a presumption of pecuniary injury in the loss of an adult child's society. *Id.* at 1244, citing *Ballweg*, 499 N.E.2d at 1379. Nevertheless, "[a] rebuttable presumption is not itself evidence." *Id.*, citing *McElroy v. Force*, 232 N.E.2d 708, 38 Ill. 2d 528 (Ill. 1967). "It merely shifts the burden of production. Once plaintiff's evidence is rebutted, the presumption no longer serves a function in the trial." *Id.*, citing *Diederich v. Walters*, 357 N.E.2d 1128, 65 Ill. 2d 95 (Ill. 1976). The presumption may be rebutted by evidence that a parent and child were estranged. *Bullard*, 468 N.E.2d at 1234. The presumption of pecuniary injury does not apply to the pecuniary losses suffered by Contreras' siblings. *See Schmall v. Vill. of Addison*, 525 N.E.2d 258, 264, 171 Ill. App. 3d 344 (Ill. App. Ct. 1988). His siblings, instead, must prove the existence of damages. *Id.*

Plaintiff has offered no evidence that Contreras' siblings suffered any damages as a result of Contreras' death. Plaintiff appears to concede this point in that plaintiff's response only contends that there is substantial evidence that Contreras' parents suffered a pecuniary loss. Plaintiff makes no mention of Contreras' siblings. Thus, GM is entitled to summary judgment on the wrongful death claims made on behalf of Contreras' siblings.

With regard to Contreras' parents, GM argues that it has demonstrated that Ms. Barron and Mr. Zapata were not dependent upon Contreras for financial support, that Ms. Barron and Mr. Zapata had no expectation of financial support from Contreras, and that Contreras was largely estranged from his parents. While the court agrees with GM that the evidence shows that Ms. Barron and Mr. Zapata did not depend upon the money that Contreras sent to them for their survival or the survival of the farm, the evidence does not go so far as to demonstrate that Contreras was estranged from his parents, particularly when taking the facts in the light most favorable to plaintiff.

9

Because the approximately $400 per month that Contreras sent to his mother was a gift, Contreras' parents cannot claim dependence on Contreras based solely on the receipt of money. *See Porter v. Klein Constr. Co.*, 515 N.E.2d 821, 823, 162 Ill. App. 3d 1 (Ill. App. Ct. 1987), citing *Dudley v. Uptown Nat'l Bank*, 167 N.E.2d 257, 25 Ill. App. 2d 514 (Ill. App. Ct. 1960) ("A gift is a voluntary transfer of property by one to another. No claim of dependence arises to one who is a mere recipient of a gift."). Ms. Barron also characterized the money sent by Contreras as a gift.

The fact that Contreras sent gifts of money, as well as gifts of tools, clothes, etc., letters, and telephoned his parents, however, stands in direct opposition to GM's claim that Contreras was estranged from his family. GM takes issue with Ms. Barron's failure to produce more than one letter sent by Contreras to her, but GM does not refute the substance of Ms. Barron's assertion that Contreras sent her letters on a monthly basis. In addition, Contreras visited his family in Mexico in December 1997, which further refutes the notion that Contreras was estranged from his family. In this case, the reasonable inference drawn from the evidence is that the distance between Contreras and his parents, which was exacerbated by the rural location of his parents' farm and their lack of a telephone, and the costs of telephone calls and travel made it difficult for Contreras and his parents to communicate with each other consistently, not that they were estranged from each other. *Cf. In re Estate of Lande*, 567 N.E.2d 668, 671, 209 Ill. App. 3d 55 (Ill. App. Ct. 1991) (Trial court's order finding father estranged from deceased daughter and depriving him of any portion of a wrongful death settlement affirmed where father never saw daughter after his divorce from her mother, despite living 12 blocks away for 17 to 20 years, and where father never increased child support payments or sent graduation gifts, birthday gifts, or cards). While Contreras was not in the constant contact with his parents envisioned in the idealized world of long-distance telephone commercials, plaintiff

has presented sufficient evidence showing that there is a genuine issue for trial on the issue of the pecuniary injury suffered by Contreras' parents. The court, therefore, denies GM's motion for summary judgment on the wrongful death claims of Contreras' parents.

## CONCLUSION

For the reasons stated above, the GM' motion for partial summary judgment [#168] is denied.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Date: April 11, 2005